IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LINDA HUDSON-KANE          )
                          )
v.                        )          No. 3:13-0026
                          )
NANCY A. BERRYHILL[1]     )
Acting Commissioner of Social Security    )

# **M E M O R A N D U M**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which Defendant has responded (Docket Entry No. 17). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 18). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 23).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I.  INTRODUCTION

Plaintiff filed applications for a period of disability, DIB, and SSI on June 4, 2009. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 49-50.[2] She alleged a disability onset date of June 17, 2005. AR 49-50.[3] Plaintiff asserted that she was unable to work because of mental impairments. AR 57.[4]

Plaintiff's applications were denied initially and upon reconsideration. AR 49-52. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Scott Shimer on July 27, 2011. AR 32. On September 16, 2011, the ALJ denied the claim. AR 9-11. On November 9, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-6), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II.  THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 16, 2011. AR 9-11. Based upon the record, the ALJ made the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since March 9, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] This was later amended to March 9, 2009. AR 12.

[4] The Commissioner also found evidence of back pain and hypertension. AR 57.

3. The claimant has the following severe impairments: Hypertension[;] Gastroesophageal Reflux Disease; Anxiety Disorder; Depressive Disorder; Substance Abuse (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently, and perform other functions and tasks consistent with medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except as follows: She is limited to jobs that do not involve the climbing of ropes, ladders or scaffolds, with no exposure to unprotected heights or around hazardous moving machinery. From a mental perspective, the claimant is further limited to work involving simple, repetitive, routine tasks, with only occasional contact with the general public, and only gradual and infrequent workplace changes.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 23, 1950 and was 58 years old, which is defined as an individual of advanced age, on the amended alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1562 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

\*\*\*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\*\*\*

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 9, 2009 (the amended alleged onset date), through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 14-25.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and

1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden

under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 14-25.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) finding that she has the RFC to perform medium work; (2) improperly discounting the mental medical source statement ("MSS") completed by

Dr. Phaythoune Chothmounethinh; (3) failing to find all of Plaintiff's alleged impairments to be severe; (4) improperly evaluating Plaintiff's credibility; and (5) failing to include in the RFC an accommodation allowing Plaintiff to elevate her legs. DE 12-1 at 1-2. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 12-13.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. The RFC.[5]**

Plaintiff contends that the ALJ committed reversible error by finding that she can perform work at the medium level. Plaintiff's claims that, because "[t]here is simply no [m]edium RFC from any physician in the file," the ALJ should have retained the services of a

---

[5] Plaintiff's fifth assertion of error alleges that the RFC improperly failed to include a requirement that she be allowed to elevate her legs due to swelling. DE 12-1 at 12. Because this relates to the ALJ's RFC determination, and due to the extreme brevity of Plaintiff's argument, the Court will address this argument as part of the discussion of this assertion of error.

physician to perform a physical examination of Plaintiff prior to assigning the RFC. DE 12-1 at 7. Plaintiff also states that "[i]t seems quite optimistic to find" that, given her age, height, and weight, she would be able to perform the physical requirements of a medium level of work. *Id.*

Plaintiff's arguments are completely unpersuasive. For one, Plaintiff fails to cite any medical evidence to support her contention that the assigned RFC is "quite optimistic." Plaintiff relies solely on conjecture, which falls well short of her burden to prove the existence of a disabling condition. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Claimant has the ultimate burden of proving the existence of a disability.") (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)). Plaintiff's contention that her age, weight, and height preclude a finding that she is capable of medium work is not only unfounded, but also, as noted by Defendant, contrary to Social Security Ruling ("SSR") 96-8p, which holds the following: "Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) … due to such factors as age and natural body build." 1996 WL 374184, at *1 (July 2, 1996).

Plaintiff next references the ALJ's determination that hypertension and gastroesophageal reflux represent severe impairments (DE 12-1 at 7), but fails to explain how such impairments demonstrate an inability to perform the physical tasks of medium work defined by 20 C.F.R. § 404.1567(c), as is required to prove disability. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation omitted). Indeed, Plaintiff cites no evidence suggesting that the RFC inaccurately reflects her physical abilities, thus leaving the Court without a basis from which to find that the RFC is not supported by substantial evidence. *See Keitz v. Astrue*, No. 09-169, 2010 WL 2791570, at *3 (E.D. Ky. July 14, 2010) ("[T]he

ALJ's RFC determination was supported by substantial evidence. No treating physician limited [the claimant's] physical activity and she did not show that her physical and mental impairments caused more restrictive limitations than the ALJ found.").

Plaintiff similarly fails to cite any regulation or case law that would have required the ALJ to order a consultative examination to address her alleged physical impairments. The Court reiterates that the burden is on Plaintiff, and not the ALJ, to demonstrate that Plaintiff suffers from a disabling condition. *Trandafir v. Comm'r of Soc. Sec.,* 58 F. App'x. 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant.") (internal citation omitted). Moreover, the regulation authorizing the Commissioner to retain a medical source to perform a consultative examination, 20 C.F.R. § 404.1512(e), is discretionary in nature: "We *may* ask you to attend one or more consultative examinations at our expense" (emphasis added). *See also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so[.]") (quoting *Landsaw*, 803 F.2d at 214).

After discussing the lack of evidence to support a finding that any of Plaintiff's alleged physical impairments were disabling (AR 20-23), and discussing the two State agency physician assessments that found Plaintiff was suffering from no physical impairment (AR 23), the ALJ appropriately exercised his discretion to forego the services of a consultative examiner. The Court also notes that the ALJ ascribed an RFC that was more favorable to Plaintiff than any evidence suggested, which was "done in order to credit [Plaintiff's] statements regarding

weakness and fatigue ….” AR 23. The Court therefore finds no merit in Plaintiff's assertion of error.

Plaintiff additionally argues that the ALJ erred by failing to include a limitation in the RFC relating to alleged swelling in her leg. As evidence, Plaintiff points to two office notes documenting her treatment at Covenant Family Practice ("Covenant"), which include a reference to pedal edema in July and December of 2009 (AR 255, 353), and a recommendation by a physician assistant on July 10, 2009 that Plaintiff "elevate [her] legs[.]" AR 256. Plaintiff claims that the ALJ's failure to "take this limitation into consideration" warrants reversal of the Commissioner's decision. DE 12-1 at 12. However, Plaintiff again falls short of offering sufficient support to demonstrate the existence of a disabling condition, the burden of which belongs to her.

As discussed above, Plaintiff must demonstrate functional limitations caused by a condition, and the mere diagnosis of pedal edema "says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. Moreover, pedal edema is not even included in the listed diagnoses from the December 2009 note, which include hypertension, anxiety, insomnia, and osteoarthritis (AR 354), but is instead recorded as a "current problem" alleged by Plaintiff. AR 353. There is no actual discussion of pedal edema or swelling of the leg by the treating physician in the office note. The only other record referenced by Plaintiff, the July 2009 note, includes a recommendation that Plaintiff "resume [hypertension medication], elevate legs, limit sodium intake," and follow up if her symptoms do not improve. AR 256. However, there was no discussion of pedal edema during any subsequent treatment at Covenant, nor any mention that Plaintiff would need to continue elevating her feet. AR 242-52. There is thus no indication that

pedal edema represents a disabling condition that meets the one-year durational requirement of 20 C.F.R. § 404.1505(a).

Additionally, this single recommendation by a physician assistant to "elevate legs" in July of 2009 does not constitute an opinion from a treating physician or other acceptable medical source regarding the severity of Plaintiff's condition. *See LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 386 (6th Cir. 2013) ("[A] physician assistant[] is not an acceptable medical source.") (citing 20 C.F.R. § 404.1513(a)). There is no opinion from a treating physician indicating a need to limit Plaintiff physically, and therefore no evidence that undermines the ALJ's RFC with respect to Plaintiff's physical capacities. Accordingly, the Court rejects this assertion of error.

**2. The opinion of Dr. Phaythoune Chothmounethinh.**

Plaintiff next argues that the ALJ erred by discounting the opinion of Dr. Phaythoune Chothmounethinh regarding her mental impairments, as contained in a mental medical source statement ("MSS") he completed on July 11, 2011. AR 293-95. In the MSS, Dr. Chothmounethinh opined that Plaintiff has "marked" limitations in numerous areas of mental functioning, including her ability to make judgments on simple work-related decisions, understand and remember complex instructions, respond appropriately to usual work situations, and interact appropriately with the public, coworkers, and a supervisor. AR 293-94. Plaintiff claims that the ALJ failed to provide "good reasons" for rejecting the opinion of Dr. Chothmounethinh, a treating physician. DE 12-1 at 8-9.

Plaintiff notes that pursuant to SSR 96-2p, a treating source's medical opinion is given controlling weight if it is "well-supported" and "not inconsistent" with other substantial evidence

in the record. 1996 WL 374188, at *2 (July 2, 1996).[6] Notably, Plaintiff does not actually argue that the ALJ erred by failing to accord controlling weight to Dr. Chothmounethinh's opinion, which is the subject of SSR 96-2p. Plaintiff instead claims solely that the ALJ failed to provide good reasons for rejecting the opinion, which is a requirement contained in 20 C.F.R. § 404.1527(c)(2): "We will always give good reasons … for the weight we give your treating source's opinion." Defendant correctly observes that Plaintiff fails to specifically address the insufficiencies of any of the reasons cited by the ALJ in support of his decision to reject Dr. Chothmounethinh's opinion. Indeed, Plaintiff's brief references no evidence in the record to support the assertion that the ALJ violated the treating physician rule, but instead merely quotes language from a prior Sixth Circuit opinion. DE 12-1 at 8-9.

While Plaintiff's failure to provide any evidentiary support for her argument is "puzzling[]," as described by Defendant, the Court is equally mystified by Plaintiff's failure to supplement her argument in her reply brief even after Defendant specifically highlighted this issue in its response. DE 17 at 11. Plaintiff's reply brief instead recites another Sixth Circuit case, but without addressing how that authority applies to the facts of this case, and references two judicial opinions, for which inadequate citations were provided and as a result, the Court cannot review the quoted opinions. DE 18 at 3-4.

Notwithstanding the paucity of Plaintiff's argument, the Court finds that the ALJ did, in fact, fail to provide "good reasons" for rejecting the opinion contained in Dr. Chothmounethinh's MSS. The ALJ provided the following justification for his decision:

---

[6] This rule, known as the "treating physician rule," is derived from 20 C.F.R. § 404.1527(c)(2): "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."

> [T]he conclusions of Dr. [Chothmounethinh] are not supported by his own objective findings, as they were largely unremarkable, especially during the later interval of remission, and more particularly from a psychiatric standpoint. Moreover, Dr. [Chothmounethinh] implicitly acknowledged noncompliance with treatment, albeit for financial reasons, with the earlier records signifying that her original medications were helping with her condition. Finally, the statement does not fully take into account the claimant's prior substance use and its remission later into the relevant period. For these reasons, there is not an adequate basis to provide controlling or even significant weight to Dr. [Chothmounethinh's] conclusions.

AR 23. With respect to Dr. Chothmounethinh's objective findings, the office notes certainly demonstrate more than "unremarkable" findings. Although Plaintiff fails to cite any such notes in either of her briefs, the record indicates that Plaintiff treated with Dr. Chothmounethinh between October of 2010 and June of 2011. AR 299-315. It is true that Plaintiff denied any depressive symptoms during office visits in December of 2010 and January of 2011. AR 310-15. Nevertheless, during each one of these visits, Dr. Chothmounethinh opined that Plaintiff was exhibiting symptoms of "anhedonia and sadness," and noted that such symptoms were present in Plaintiff's daily life "about half the time." AR 310, 313, 320, 323, 328.

Additionally, the record shows that Plaintiff presented with a "moderate degree of depression" during subsequent office visits in February, March, May, and June of 2011. AR 299, 302, 305, 308. In October of 2010, she was positive for "anxiety, depression and feelings of stress." AR 317. During a visit in February of 2011, Dr. Chothmounethinh noted that Plaintiff's symptoms of anhedonia and sadness were "frequent, and present most days." AR 299. In May of 2011, Dr. Chothmounethinh noted that while a prescription of Lexapro had shown improvement in Plaintiff's depressive symptoms during the first two months it was taken, her symptoms were currently "worsening again." AR 305. In each of Plaintiff's final three office visits at Covenant, Dr.Chothmounethinh also noted that Plaintiff demonstrated a "decreased ability to concentrate,"

a diagnosis that he cited in support of his MSS, as well as fatigue and sadness. AR 294, 302, 305, 308. While the Court stops short of determining whether these findings support the severity of the limitations ascribed in the MSS, the Court finds that the ALJ's characterization of such findings as "unremarkable" is erroneous.

The ALJ's second stated reason for rejecting Dr. Chothmounethinh's opinion, Plaintiff's noncompliance with treatment due to her inability to afford prescribed medication, is undermined by SSR 82-59. This ruling states, in part, that when the Commissioner makes a determination that there has been a "failure" to follow prescribed treatment, as is the case here, a determination "must also be made as to whether or not failure to follow prescribed treatment is justifiable." 1982 WL 31384, at *1 (1982). The ruling further states that one such justifiable cause is that the claimant "is unable to afford prescribed treatment which he or she is willing to accept[.]" *Id*. at * 4. Dr. Chothmounethinh specifically referenced Plaintiff's inability to afford the medication prescribed for her depressive symptoms in his office notes (AR 302), which Plaintiff confirmed during her hearing. AR 39. In a letter dated July 8, 2011, Dr. Chothmounethinh reiterated that Plaintiff "has been unable to afford any adjunct medications for her condition." AR 296. Despite this evidence, and despite conceding that Plaintiff's noncompliance with her treatment was "for financial reasons" (AR 23), the ALJ nevertheless used Plaintiff's poverty as basis for rejecting Dr. Chothmounethinh's opinion, which the Court finds unreasonable. *Cf. Marks v. Colvin*, No. 3:15-cv-339, 2016 WL 4411427, at *3 (S.D. Ohio Aug. 19, 2016) (holding that ALJ's failure to consider whether Plaintiff's noncompliance with treatment was due to a "good reason" was not harmless error in light of evidence indicating that the claimant "ran out of medication and could not afford to buy more"); *see also Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) ("To a poor person, a medicine that [s]he cannot

16

afford to buy does not exist."); *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) ("If … the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law."); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude a finding of disability "when that failure is justified by lack of funds").

The ALJ additionally faults Dr. Chothmounethinh's MSS for failing to "take into account [Plaintiff's] prior substance use and its remission later into the relevant period." AR 23. The ALJ references Plaintiff's testimony that she has experienced two relapses since undergoing drug rehabilitation in 2009, with her most recent relapse occurring approximately one year prior to her hearing in July of 2011. AR 15, 21-22, 38-39. The Court notes that much of the ALJ's opinion is dedicated to Plaintiff's struggles with substance abuse. AR 15, 17, 20-23.

The problem with rejecting Dr. Chothmounethinh's MSS based on Plaintiff's "prior substance abuse" (AR 23) is that the ALJ assumes, without supporting evidence, that such "prior substance abuse" negates Dr. Chothmounethinh's findings. It was certainly within the ALJ's purview to consider Plaintiff's substance abuse, especially in light of the report documenting her consultative examination with Dr. Thelma Foley, in which Dr. Foley stated that Plaintiff "has the educational competence to handle her funds although she would probably spend some of it on drugs." AR 267. However, Dr. Foley's examination took place nearly two years before Dr. Chothmounethinh completed the MSS. AR 32, 265. The ALJ later appeared to accept Plaintiff's hearing testimony that she had not had a relapse in approximately one year. AR 15, 38-39. Nevertheless, the ALJ dismissed Dr. Chothmounethinh's findings despite Dr. Chothmounethinh's awareness of Plaintiff's "prior substance abuse" at the time he completed the MSS, as evidenced by the consistent documentation of Plaintiff's involvement in

drug rehabilitation throughout his office notes. AR 299-300, 303, 306, 311, 314. Additionally, there is no indication that the ALJ considered Plaintiff's mental limitations following her most recent relapse. *See Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004) ("The ALJ remains free ... to consider the limitations of a mental condition when such limitations exist after a claimant stops abusing substances, regardless of the causal relationship between the mental illness and substance abuse.")

The ALJ's error is compounded by his failure to explain the weight accorded to Dr. Foley's opinion regarding Plaintiff's mental condition. The ALJ cites the report documenting Dr. Foley's consultative examination numerous times in the opinion (AR 15, 17, 19, 22), focusing primarily on Dr. Foley's statement that Plaintiff "would probably spend some of [an award] on drugs." AR 267. The ALJ credited Dr. Foley's determination that Plaintiff has only mild impairment in her ability to concentrate, yet proceeded to discount Dr. Foley's opinion with respect to persistence based on Plaintiff's alleged substance abuse: "[Dr. Foley] went on to say the claimant had questioned but adequate persistence, but this must be viewed in the broader context of the claimant's substance use and the view that she will at some point resume its use." AR 17. There is no explanation, however, as to why substance abuse undermines Dr. Foley's finding with respect to persistence, especially since Dr. Foley was well aware of this issue at the time she issued her opinion. Nor did the ALJ question the vocational expert during the hearing as to the impact of substance abuse on Plaintiff's ability to gain employment. *Cf. Smith v. Comm'r of Soc. Sec.*, 572 F. App'x 363, 368 (6th Cir. 2014) ("In compliance with the Social Security Regulations, the ALJ was entitled to rely on [a reviewing psychologist's] testimony, as well as on the testimony of the vocational expert, in determining that [the claimant] was impaired but not disabled when he complied with his prescribed treatment and did not use drugs or alcohol.").

The ALJ clearly determined that Plaintiff has a substance abuse problem based on his finding that "Substance Abuse" represents a severe impairment (AR 14), as well as his decision to either discount or reject the opinions of the only two examiners in the record based on substance abuse. AR 15, 23. By doing so, the ALJ found that substance abuse was a contributing factor to the determination of whether Plaintiff suffers from a disability. However, such a finding is improper without first evaluating a claimant's drug addiction pursuant to the relevant regulation, 20 C.F.R. § 404.1535.[7] *See Williams v. Barnhart*, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004) ("To find that drug addiction is a contributing factor material to the determination of disability without first finding the claimant disabled … is to put the cart before the horse."). This regulation states in relevant part:

> *If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(a) (emphasis added). The plain language of this regulation therefore makes a finding of disability a "condition precedent" to the evaluation of a claimant's drug or alcohol addiction. *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003)) (internal citation omitted). Indeed, the ALJ "must reach this determination initially … using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Id.* at 694; *see also Williams*, 338 F. Supp. 2d at 862 (holding that the five-step sequential evaluation process contained in 20 C.F.R. § 404.1520 must be

---

[7] This regulation implements the standard articulated in 42 U.S.C. § 423(d)(2)(C), which states that, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

undertaken "before any consideration is given to whether drug addiction is the cause of such disability.").

In the instant case, there is no indication that the ALJ took such measures. In fact, the ALJ failed to even cite 20 C.F.R. § 404.1535, an omission that at least one court in this circuit has deemed reversible error:

> [The] ALJ's failure to cite the operative substance abuse regulation anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there. The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard.

*Lynch v. Comm'r of Soc. Sec.*, No. 1:12-cv-075, 2013 WL 264670, at *8 (S.D. Ohio Jan. 23, 2013), *report and recommendation adopted*, No. 1:12-cv-75, 2013 WL 588888 (S.D. Ohio Feb. 14, 2013) (internal citation omitted). The ALJ therefore "improperly conflated the sequential analysis by discounting the effects of plaintiff's substance abuse issues *prior* to making a determination of disability." *Lynch*, 2013 WL 264670, at *8.

The Commissioner has argued in previous cases that it is unnecessary for the ALJ to determine whether a claimant's substance abuse was a contributing factor to disability when the ALJ ultimately determines that the claimant is not disabled. *See Parker v. Comm'r of Soc. Sec.*, No. 12-cv-14316, 2014 WL 902692, at *10 (E.D. Mich. Mar. 7, 2014). While such an argument "has some appeal," *id.*, it cannot be disputed that the ALJ in this case failed to analyze Plaintiff's impairments under the five-step sequential evaluation process "without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694. As in the *Parker* case, the ALJ continually factored Plaintiff's alleged substance abuse into consideration throughout the five-step analysis. AR 15, 17, 20-23. This included a discussion as to the ALJ's determination that insomnia did not represent a severe impairment at step two of the evaluation:

> Accepting the claimant's testimony that she has not had a relapse with respect to any substance in about a year, this overlaps closely to the recent period where the claimant's insomnia was no longer mentioned in the treatment notes ... This being the case, even assuming the claimant's insomnia is a medically determinable impairment, the evidence does not support a finding that it is presently severe, nor does it support a finding that it would be severe at any other time if there had been increased compliance with treatment and advice, especially her past substance use.

AR 15. Consideration of drug addiction was error at this point in the ALJ's evaluation, as the ALJ's determination must first be based on substantial evidence of Plaintiff's functional limitations "without deductions for the assumed effects of substance use disorders." *Williams*, 338 F. Supp. 2d at 863 (quoting *Brueggmann*, 348 F.3d at 693-95).

Finally, the Court notes that the ALJ incorrectly interpreted Dr. Chothmounethinh's stated support for his MSS findings. The ALJ erroneously claims that Dr. Chothmounethinh's MSS states that Plaintiff exhibited "[d]epression with anxiety with significant *improvement* in memory, concentration and mood." AR 22 (emphasis added). While Plaintiff does not raise this issue in her brief, the statement referenced by the ALJ actually states that Plaintiff demonstrated "[d]epression with anxiety with significant *impairment* in memory, concentration and mood." AR 294 (emphasis added). This is confirmed by an accompanying letter submitted by Dr. Chothmounethinh, in which he states that Plaintiff "continues to have significant problems with memory, concentration, and mood[.]" AR 296. This misreading is not insignificant, as the ALJ proceeded to intimate that Dr. Chothmounethinh's MSS was internally inconsistent by mistakenly observing that Dr. Chothmounethinh had "curiously" written that Plaintiff had showed "improvement" despite recommending severe functional limitations. AR 22. This error is therefore not harmless, and, in conjunction with the ALJ's failure to provide good reasons for rejecting the MSS, warrants remand of this case for further consideration.

Defendant correctly observes that Plaintiff's brief fails to allege any flaws in the ALJ's stated reasons for rejecting Dr. Chothmounethinh's opinion, nor does it "challenge the sufficiency of the evidence underlying those reasons." DE 17 at 11.[8] The Court also reiterates that Plaintiff's reply brief, which was presumably filed to address the arguments presented in Defendant's response, makes no attempt to respond to these allegations. Nor does Plaintiff raise in either of her filings any of the issues discussed above regarding the shortcomings of the ALJ's findings with respect to Dr. Chothmounethinh's MSS. Nevertheless, the Court concludes that the ALJ violated 20 C.F.R. § 404.1527(c)(2) by failing to provide good reasons for rejecting Dr. Chothmounethinh's opinion, which necessitates reversal of the Commissioner's decision. *See Friend v. Comm'r of Soc. Sec.,* 374 F. App'x 543, 551 (6th Cir. 2010) ("We will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician.") (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 543-46 (6th Cir. 2004)). Additionally and alternatively, the Court finds that the ALJ erred by failing to appropriately consider Plaintiff's alleged substance abuse pursuant to 20 C.F.R. § 404.1535.

**3. Whether the ALJ failed to consider all of Plaintiff's impairments.**

Plaintiff's next assertion of error briefly contends that the ALJ erred by failing to find that several other alleged conditions represent severe impairments. DE 12-1 at 9. Plaintiff claims that the ALJ "fail[ed] to provide sufficient reasons" for determining that her backache, "urge

---

[8] Noticeably absent from the ALJ's opinion and Defendant's brief is the fact that Dr. Chothmounethinh is a family practitioner (AR 295) and not a mental health specialist, which has bearing on the ALJ's evaluation of the treating physician's opinion. *See Kester v. Astrue*, No. 3:07-cv-0423, 2009 WL 275438, at *7 (S.D. Ohio Feb. 3, 2009) ("That [a family practitioner] is not 'certified' in the area of mental health treatment is a proper factor to use in the evaluation of his opinions, but it is not the only factor.").

incontinence," malaise and fatigue, pedal edema, osteoarthritis, insomnia, and hypertension did not constitute severe impairments. *Id*. The Court declines to address this argument, however, in light of its decision to reverse the Commissioner's decision and remand for an additional hearing.

### 4. Plaintiff's credibility.

Plaintiff asserts that the ALJ violated SSR 96-7p by failing to properly evaluate her credibility.[9] Plaintiff claims that the ALJ's "single, conclusory statement" that he utilized the criteria outlined in SSR 96-7p was insufficient to satisfy the actual criteria contained therein. DE 12-1 at 10-11. Plaintiff additionally argues that the ALJ unfairly discounted her credibility based on her ability to perform specific activities of daily living "on a very minimal basis." *Id*. at 11.

As an initial matter, the Court notes the incongruity of Plaintiff's argument. Plaintiff first faults the ALJ for making a "single, conclusory statement," but then proceeds to critique the very reasons provided by the ALJ for discounting Plaintiff's credibility. *Id*. at 11. Those two arguments cannot logically co-exist. Moreover, while the ALJ indeed discussed Plaintiff's "mild restriction" with respect to her activities of daily living (DE 17),[10] the thrust of his credibility determination focused largely on the lack of evidence to support her claims of disabling pain, the inconsistency between the few records provided by Plaintiff and her allegations, and the

---

[9] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, Plaintiff's complaint was filed in January of 2013, therefore SSR 96-7p applies to the undersigned's analysis of this claim.

[10] The Court also notes that Plaintiff does not actually identify any of the daily activities that the ALJ allegedly cited to discredit her testimony. Plaintiff instead provides a broad statement that, "[b]y focusing on these few activities of daily living, the ALJ ignored the medical evidence which shows that the Plaintiff is disabled." DE 12-1 at 11. Plaintiff also fails however to reference any such evidence that demonstrates disability.

discrepancies in Plaintiff's claims regarding the termination of her last job. AR. 19-20. With respect to the latter, the ALJ noted that Plaintiff initially claimed that she stopped working because she "could no longer do the job" (AR 141), yet later stated during a consultative examination that she stopped working because her employer "wouldn't give her a day off to attend her cousin's funeral." AR 266. In two other versions, Plaintiff stated that she lost her job because she was accused of attempting to bribe a supervisor (AR 203), and that she was terminated when she started methadone treatment. AR 266. Regardless, the Court declines to make a finding with respect to the ALJ's credibility determination in light of its decision to remand for an additional hearing.

## V. CONCLUSION

For all of the above reasons, Plaintiff's motion for judgment on the administrative record (DE 12) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling

An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge